MILLARD COUNTY, a legal
and political subdivision,
Petitioner,

v.

UTAH STATE TAX COMMISSION ex
rel. INTERMOUNTAIN POWER
AGENCY, Respondent.

MILLARD COUNTY, a legal
and political subdivision,
Petitioner,

v.

UTAH STATE TAX COMMISSION ex
rel. INTERMOUNTAIN POWER
AGENCY, Respondent.

Nos. 890100, 900285.

Supreme Court of Utah.

Dec. 16, 1991.

sales tax liability. These cases have been consolidated.

Utah's Local Sales and Use Tax Act allows any county, city, or town to impose a local option sales and use tax, or "piggyback" tax, up to ¾ of 1% on all sales subject to the state sales tax within the jurisdiction of the local governmental entity. Utah Code Ann. §§ 59–12–201 to –208 (1987 & Supp.1991); *see also Salt Lake City v. Tax Comm'n*, 813 P.2d 1174, 1175 (Utah 1991). Although the tax is imposed only at the option of local government, the state collects the local option tax along with the state sales tax and remits the proceeds of the local tax to the governmental entity imposing it. Millard County elected to impose a local option sales and use tax.

IPA pays substantial sales taxes on transactions that occur in Millard County. In May 1988, IPA filed a petition with the Commission for a redetermination of its sales and use tax liability. In June 1988, the County filed a motion to intervene in the redetermination proceeding and to review certain records pertaining to IPA's tax liability. In August 1988, the Commission and IPA stipulated to the amount of IPA's tax liability, and in February 1989, the Commission denied the County's motion to intervene and its request to review records.

R. Paul Van Dam, Leon A. Dever, Salt Lake City, for Utah State Tax Com'n.

Mark K. Buchi, Richie D. Haddock, Richard G. Wilkins, Salt Lake City, for Intermountain Power Agency.

LeRay G. Jackson, Fillmore, Bill Thomas Peters, Salt Lake City, and Warren H. Peterson, Delta, for Millard County.

STEWART, Justice:

Millard County seeks a writ of review of an order of the Utah State Tax Commission (1) denying the County's motion to intervene in a proceeding before the Commission to redetermine the sales tax liability of Intermountain Power Agency ("IPA"), and (2) denying the County's request to review certain Commission records concerning IPA. Millard County also seeks review of the Commission's final order fixing IPA's

■ In this Court, the County argues that it was entitled to review the tax records because of a contractual provision between the County and the Commission. The terms of the contract are statutorily mandated. The contract provides in part: "The Commission agrees to permit authorized personnel of the Political Subdivision to examine the records and procedures of the Commission concerning the local tax law, the ordinance and the records of taxpayers subject thereto." The Commission responds that Utah Code Ann. § 59–1–403(1) (1987) requires that sales tax returns be kept confidential and, therefore, the County is not entitled to review the records.

We turn first to that issue. Utah Code Ann. § 59–1–403(3)(b) provides that the Commission may by rule share information gathered from returns with a political subdivision of the state if the political subdivision grants substantially similar privileges to the state. This Court recently held that contractual provisions that are almost identical to the instant provisions accorded Salt Lake County the right of access to relevant records concerning the local tax law. *See Salt Lake City v. Tax Comm'n*, 813 P.2d 1174 (Utah 1991). Since the instant case is not distinguishable, *Salt Lake City* is controlling. We hold that the Commission erred in denying Millard County's request to review the records.

▮ Millard County next asserts that the Commission erred in denying the motion to intervene. We first note that an order denying a motion to intervene is a final disposition of the claims asserted by the applicant for intervention and is appealable. *See Tracy v. University of Utah Hosp.*, 619 P.2d 340, 342 (Utah 1980); *Commercial Block Realty Co. v. United States Fidelity & Guaranty Co.*, 83 Utah 414, 28 P.2d 1081, 1082 (1934). We have previously held that counties have standing to challenge determinations by the Commission which directly affect the counties' budgeting and taxing functions. *See Kennecott Corp. v. Salt Lake County*, 702 P.2d 451, 454 (Utah 1985). It follows that Millard County has standing to intervene based on its direct interest in the proceeds of the local option sales tax that the Commission collected on the County's behalf.

▮ Before we reach the question of the County's entitlement to intervene, we address the argument advanced by the Commission and IPA that their stipulated resolution of IPA's tax liability renders the County's petition to intervene moot. The general rule under the rules of civil procedure is that final settlement of all issues by all parties to a controversy renders a permissive intervenor's motion to intervene moot. *See* 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.2, at 236 (2d ed.1984); *Horn v. Eltra Corp.*, 686 F.2d 439, 440–42 (6th Cir. 1982). The rule is different, however, with respect to a motion to intervene as of right. The settlement of a controversy by the parties before a motion to intervene as of right has been adjudicated does not constitute a final settlement and does not render moot either the motion or an appeal from a denial of that motion. In *Federal Deposit Ins. Corp. v. Jennings*, 816 F.2d 1488, 1491 (10th Cir.1987), the court stated: "To allow a settlement between parties to moot an extant appeal concerning intervention of right might well provide incentives for settlement that would run contrary to the interests of justice."[1] These principles governing mootness with respect to intervention also appropriately apply where intervention is governed by statute.

To permit the settlement of a controversy by stipulation to moot an extant motion to intervene under a statute or to moot an appeal from an order denying a motion to intervene could destroy the legal right on which the motion to intervene is based and, in this case, allow procedural strategies to defeat the statutory policy allowing for intervention. Furthermore, an appeal from a denial of motion to intervene of right is not mooted just because no party to the case takes an appeal from the final judgment or order in the case in which the putative intervenor sought to intervene. *Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 688, 81 S.Ct. 1309, 1312, 6 L.Ed.2d 604 (1961). The same rule applies even when one of the parties to the litigation is a governmental agency and the putative intervenor is a governmental entity.

The County's motion to intervene was filed before the Commission and IPA

---

1. In *Jennings*, the court distinguished *Tosco Corp. v. Hodel*, 804 F.2d 590 (10th Cir.1986), which held that when a motion to intervene is filed after settlement, a court lacks jurisdiction to decide the motion because there was no existing case in which to intervene. *Jennings*, 816 F.2d at 1491 n. 4. However, some courts, in considering the issue of timeliness of a motion to intervene, have held that parties who have knowledge of contemplated intervention cannot cut off a right of intervention by a settlement. *See* Annotation, *Time Within Which Right to Intervene May Be Exercised*, 37 A.L.R.2d 1306, § 18[b], at 1362 (1954).

reached a settlement. The Commission denied the motion six months after the settlement of the tax liability issue. Here, the Commission was both the agency responsible for ruling on the motion to intervene and a party to the settlement. Were we to hold the County's motion to intervene moot, we would enable the Commission to circumvent the statutory right of intervention. The Commission cannot deal with such motions in a fashion that undermines the purpose of the statutory scheme for intervention.

In sum, the Commission's settlement with IPA did not moot either the motion to intervene or the County's appeal from the order denying the motion to intervene.

We turn now to the merits of the County's motion to intervene. Utah Code Ann. § 63–46b–9(2) provides that a petition for intervention "shall be granted," first, if a petitioner's legal interest may be "substantially affected" and, second, if the "interests of justice and the orderly and prompt conduct" of the proceedings will not be materially impaired.[2]

■ Thus, although § 63–46b–9(2) does not grant an absolute right to intervene, it does establish a conditional right to intervene if the requisite legal interest is present. That right is subject only to the condition that the interests of justice and orderly conduct of the administrative proceedings will not be impaired.

As to the first part of the statutory standard, it is clear that the County has a legitimate legal interest in IPA's sales tax liability, and consequently in the Commission's settlement of the controversy, because the County's legal interest in the proceeds of the local option tax could have been "substantially affected" by the resolution of the issues in the final settlement.

■ With respect to the second part of the statutory standard, the Commission cannot simply deny a motion to intervene on the ground that its discretion is unlimited and therefore unreviewable. The Commission's discretion is limited, and to deny a motion to intervene, the Commission must rely on substantial reasons.

■ In its denial of the County's motion to intervene, the Commission stated that the County's intervention would "create an administrative nightmare, greatly increase the cost of administering the system, clog the entire system including the appeal and hearing system, unduly complicate all sales tax proceedings, and substantially delay the receipt of ... revenues." The basis for these conclusions was that if the County were allowed to intervene, then approximately 250 other taxing districts would also have the same rights.[3] That conclusion is plainly incorrect.

Millard County has sought to intervene with respect to only one taxpayer and with respect to limited transactions, the taxability of which may be legally arguable. The County has not sought to review the validity of all sales tax collections within its borders. If such were the case, the Commission's fears would have a sounder basis. But here, the Commission's contention that allowing intervention would clog the entire administrative system is highly exaggerated.

■ It does not necessarily follow, however, that every local governmental agency that adopts a local option sales tax must be allowed to intervene in all Commission proceedings dealing with the collection of local

2. Utah Code Ann. § 63–46b–9(2) states in full:
 The presiding officer shall grant a petition for intervention if he determines that:
 (a) the petitioner's legal interests may be substantially affected by the formal adjudicative proceeding; and
 (b) the interests of justice and the orderly and prompt conduct of the adjudicative proceedings will not be materially impaired by allowing the intervention.
 Utah Administrative Rule 861–1–5A(J), promulgated by the Commission, also provides for in-

tervention. Rule 861–1–5A(I) provides, with respect to motions for consolidation, and by reference, motions for intervention, that the "presiding officer" has "wide discretion" in granting or denying motions.

3. The Tax Commission expresses the concern that it will have to give all governmental agencies that have some legal interest in a given proceeding prior notice of their statutory right to intervene. We fail to see any reason why such a notice would have to be given.

sales and use taxes. Clearly, there is a vast difference between Millard County's interest in intervening in a proceeding against IPA and the interest of a city or county in intervening in routine proceedings involving sales tax audits of all businesses located in that city or county. The issues the County sought to raise here are much more complex from a legal point of view and have a much greater potential impact on the local government than routine sales tax audits. Here, the Commission settled with IPA for substantially less than the Commission initially claimed IPA owed. We certainly do not impute either improper motives or conduct to the Commission in compromising the claims against IPA. Nevertheless, the County does have an interest in the amount of the taxes compromised. Its participation in the proceedings may have resulted in a different, more favorable settlement of IPA's tax liability. Indeed, the Legislature may have thought that local governmental agency participation in significant cases such as this would assure better enforcement of tax liabilities of major taxpayers than the Commission could otherwise accomplish because of the Commission's broad responsibilities and limited resources and the more particularized interest of the local agency.

Furthermore, although intervention may complicate proceedings to a degree, the Commission can and should devise procedures to minimize the burden without undermining the right of local governments to intervene in appropriate cases. In cases in which a number of political subdivisions have a legitimate legal interest in a proceeding, the Commission might, for example, allow one local taxing agency to act on behalf of other similarly situated agencies if intervention and full participation of all would be unduly burdensome to the Commission. When there is an identity of interests among a number of taxing agencies, it is unlikely, in any event, that multiple interventions would be sought. Even if they were, the interests of the agencies can be adequately accommodated in most instances by a procedure that allows one party, or perhaps a few, to act on behalf of others.

In sum, Millard County has met both the statute's and the Commission's requirements for intervention. The disputed tax assessment against IPA necessarily turns on facts and legal issues that are identical with respect to the County and the Commission. The County's legal interests may have been substantially affected. The Commission's conclusion that the interests of justice and the orderly and prompt conduct of the proceedings would be impaired by intervention is not realistic. Here, there is only one taxpayer; only one local entity seeks to intervene; and the amount of tax revenue at stake is large in terms of its significance to the County. This is not a run-of-the-mill sales tax audit case. To disallow intervention in this case would justify disallowing it in every case and render the intervention statute a nullity.

Therefore, the Commission erred in denying the County's motion to intervene. Millard County is entitled to participate in a reopened proceeding before the Commission to determine the amount of IPA's tax liability.

 Finally, we turn to the County's assertion that the Commission has no authority to compromise or settle IPA's tax liability. In response, the Commission argues that it has exclusive authority to ascertain, assess, and collect sales and use taxes. Utah Code Ann. § 59–12–203 permits counties and other taxing districts to levy sales and use taxes, but § 59–12–204(5) requires a county or taxing district to contract "with the commission to perform all functions incident to the administration or operation of the ordinance." *See also* Utah Code Ann. § 59–12–204(4). Section 59–12–118 provides: "The administration of this chapter is vested in and shall be exercised by the commission which may prescribe forms and rules to conform with this chapter for the making of returns and for the ascertainment, assessment, and collection of the taxes imposed under this chapter."

As a general proposition, § 59–12–204(5) and § 59–12–118 authorize the Commission to determine the amount of a taxpayer's

sales tax liability and, in appropriate cases, to compromise and settle disputes with taxpayers. However, we need not now decide whether, after intervention has been allowed in a local option sales tax case, the Commission may settle a case over an intervenor's objection.

The Commission's order denying the County's motion to intervene and the County's request to review tax records is reversed, and the case is remanded for further proceedings.

HALL, C.J., HOWE, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.